## (April 15, 1965)

■ MANUEL GARCIA, Respondent, v. CITY OF NEW YORK, Defendant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Appellants. CITY OF NEW YORK, Third-Party Plaintiff, v. GEORGE M. KAUFMAN, Third-Party Defendant. CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant and Third-Party Plaintiff-Appellant, v. GEORGE M. KAUFMAN, Doing Business as ALLBORO WATER & SEWER SERVICE Co., Third-Party Defendant-Respondent. CONSOLIDATED TELEGRAPH & ELECTRICAL SUBWAY COMPANY, Defendant and Third-Party Plaintiff-Appellant, v. GEORGE M. KAUFMAN, Doing Business as ALLBORO WATER & SEWER SERVICE Co., Third-Party Defendant-Respondent. CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant, v. GEORGE M. KAUFMAN, Doing Business as ALLBORO WATER & SEWER SERVICE COMANY, Respondent.

APPEAL (1) from a judgment of the Supreme Court in favor of plaintiff, entered November 27, 1963 in New York County, upon a verdict rendered at a Trial Term in a personal injury negligence action, and (2) from that part of said judgment in favor of the third-party defendant Kaufman dismissing the third party complaints of Edison and Consolidated Telegraph and (3) from that part of said judgment in favor of defendant Kaufman against plaintiff Edison on the merits on Edison's cause of action for property damage.

*Per Curiam.* This appeal concerns a personal injury action against Consolidated Edison Company of New York, Inc. (Edison) and Consolidated Telegraph & Electrical Subway Corporation (Telegraph), with which has been consolidated an action by Edison against plaintiff's employer, George M. Kaufman, doing business as Allboro Water & Sewer Service Co., to recover the cost of replacing a cable allegedly damaged through the negligence of Kaufman and plaintiff. The judgment, entered after a jury trial, awarded damages to plaintiff, dismissed cross complaints by Edison and Telegraph against Kaufman to recoup such damages, and denied Edison its cable replacement cost. From each of these dispositions an appeal has been taken by Edison individually and as successor to Telegraph by statutory merger. For convenience this opinion will refer to Edison and Telegraph as a single entity under the name of the former.

Plaintiff's injuries were sustained on July 7, 1956 while he and Pedro Benitez, another of Kaufman's employees, were engaged in excavating beneath the surface of the street in front of 1957 First Avenue, Manhattan. Kaufman had made a contract to replace the water pipe which served the building at that address. The function of plaintiff and Benitez was to dig a hole in the sidewalk in front of the premises until they reached the pipe and then, on hands and knees, to tunnel along the line of the pipe towards the middle of the street in the direction of another hole that had been excavated by other Kaufman employees. While scooping out the tunnel, plaintiff encountered two stones, which he sought to remove with a crowbar. The tip of the crowbar, which was five feet long and which plaintiff testified he was using with a twisting and prying motion, penetrated to the conductor of one of Edison's high tension cables, and plaintiff was severely burned by the resulting electrical flash.

The cable with which the crowbar came into contact was one of a group of 16, each contained in a duct made of quarter-inch thick fibre. Such a multiple collection of ducts is known as a duct bank, and it is not disputed that proper engineering practice demands that a duct bank be enclosed in concrete (cf. *Alesi* v. *City of New York*, 9 A D 2d 236). Edison's standard specifications for a duct bank called for a concrete casing two inches thick, whereas plaintiff's expert was of the view that good practice required a thickness of at least three inches. However, if the duct bank here involved conformed to Edison's specifications, plaintiff would have no case since his expert readily conceded that a crowbar, when used, as here, for prying, as distinguished from "driving hard with it," would not penetrate two inches of concrete. Plaintiff's thesis on this appeal, accordingly, is that there was no concrete casing at all. To quote from his brief, "Here the protection of concrete was not present. All that was there was a fibre duct, lying under ground for almost 40 years, a protection obviously vulnerable to puncture by contact even with the simplest of tools, such as a crowbar."

Proof of this premise rests primarily on the testimony of plaintiff and Benitez that they saw no concrete. Under the peculiar circumstances under which they made their observations, however, it is unlikely they could see any concrete if it were present; obviously the earth they were removing probably blocked their view. Benitez was handed a photograph of the tunnel which shows a horizontal section of pipe extending into what appears to be what he called a wall, with a valve affixed to the pipe at a point before it reached the wall. In the wall, to use the description of plaintiff's expert, "there are two holes where flames flashed, where the holes are burned." Benitez was emphatic that when the accident had occurred the digging had not gone so far as to expose the valve ["I don't see that valve when I was working

that day * * * You have a wall. I no see no wall there when I was working there"]. If Benitez' testimony is true, it is noncommittal as to the presence or absence of concrete; if untrue (and plaintiff's expert had no question that Benitez' "wall" was "the surface that existed at the time the flash came out"), it indicates his apprehension that the photograph disclosed a condition unfavorable to his co-worker's case. When plaintiff's expert was shown the photograph he said, "this indicates a puncture in the soil. Whether or not there is a puncture in the, duct, I can't see from the photograph." He could not agree that the photograph showed concrete "under a very thin layer of dirt" since the surface of the "wall" did not appear smooth enough.

Such testimony indicates the unlikelihood that either plaintiff or Benitez could offer convincing ocular proof of the absence of a concrete casing. The improbability is not lessened by the fact that plaintiff was restricted to working on hands and knees within a small circumference, with only the illumination of a flashlight held by Benitez, to whom plaintiff passed back stones he was removing for deposit by Benitez outside the excavation.

On the other hand, direct testimony is not wanting that Edison's specifications were followed. As part of plaintiff's case, there was read into evidence the pretrial deposition of Albert Di Francesco, an Edison employee, who testified to the presence of concrete approximately two inches thick, on the basis, however, of unspecified records, not of personal observation. The statements of other Edison employees are not vulnerable on that score. Edward Geoghegan, at the time of the accident an assistant foreman, testified circumstantially regarding his repair of the damaged duct, stating that he removed the surrounding concrete with a hammer and chisel, and that the thickness of the concrete that he "broke out on the side of the duct" was approximately two inches. Joseph Treanor, at the time of the accident a supervising foreman for outside construction work, testified that he entered the excavation to examine the damage with the aid of a flashlight, that he saw a concrete wall with "[t]wo puncture marks in the concrete that had discolored, and like a burn," and that the concrete wall was scored and cut to the depth of at least an inch in two or three other spots as if by a sharp-pointed instrument. Plaintiff's counter to the testimony of these employees is that no express mention of concrete appears in the reports of the repairs in Edison's files or in the bills Edison sent Kaufman for the cost of the repairs.

The conclusion that the verdict in plaintiff's favor is against the weight of the credible evidence seems to us inevitable. An additional consideration pointing to a new trial must be noted. In this court plaintiff states that he "had made it abundantly clear that he claimed that there was no concrete there at all. Moreover, it was undisputed that were the concrete there as claimed by defendants [i.e., of the thickness of two inches instead of three inches], the accident could not have happened if the concrete was sound." The jury's understanding of plaintiff's claim, as shown by the excerpt from the court's charge quoted in the margin,* must have been different and may have induced the verdict in plaintiff's favor notwithstanding a belief that two-inch thick concrete was in fact present.

---

* "He further charges, as against the Subway Company, that there was absolutely no concrete around the fibre ducts, and he goes further and says, through an expert that he called, that even assuming what the defendant says is correct, that there was two inches of concrete around those ducts, that that did not meet the minimum standard, and was therefore inadequate. He claims that as a result thereof, the duty which devolved upon the Subway Company of due care was violated, and therefore it was negligent."

Admittedly, Kaufman gave no notice to Edison of his intention to excavate. Edison argues that the omission frees it from liability; the respondents that an emergency condition excused the omission. Expression of any opinion on the issues involved in these contentions must await a more thorough exploration of the facts than the parties have undertaken. With one exception, other points raised require no discussion in view of our direction of a new trial. The exception relates to the admission in evidence of the photographs taken of plaintiff while he was undergoing hospital treatment. Their contribution to the presentation or understanding of the issues is so slight that we must deem their introduction an excessive effort to capture jury sympathy (Richardson, Evidence [9th ed.], § 131). The direction of a new trial of the personal injury action requires a similar direction in respect to the other branches of the litigation.

Accordingly, the judgment should in all respects be reversed, on the law and on the facts, and a new trial ordered, with costs to abide the event.

STEUER, J. (dissenting). We dissent from so much of the disposition of the majority as orders a new trial on the plaintiff's complaint. In so doing we adopt the statement of the facts appearing in the majority opinion. On these facts we would find that not only was the jury verdict against the weight of evidence but actually without any evidentiary basis at all. What appears in the record is merely a deduction by the plaintiff and his co-worker that defendant's cable was not enclosed in concrete. As the opinion demonstrates, neither the plaintiff nor his witness was in a position to observe whether there was such a concrete duct or not. In the face of the substantial evidence of the presence of the concrete covering, the possible inferences that could be drawn from the evidence offered by plaintiff cannot even raise an issue. Incredible evidence is no evidence at all (*Tosto* v. *Marra Bros.*, 275 App. Div. 686, affd. 299 N. Y. 700; 22 N. Y. Jur., Evidence, § 649). The disposition made leaves open the claim of the defendants against Kaufman, and with this we are in accord.

The complaint should be dismissed and the counterclaim severed for further proceeding.

Botein, P. J., Rabin and Witmer, JJ., concur in *Per Curiam* opinion; Steuer, J., dissents in opinion in which Valente, J., concurs.

Judgment reversed, on the law and on the facts, and a new trial ordered, with $50 costs to abide the event.